UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH R. GIVENS, | ) | Case No. 1:07CV794 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL ASTRUE, | ) | MEMORANDUM ORDER AND OPINION |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |

Deborah R. Givens ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. Plaintiff asserts that: (1) the Administrative Law Judge ("ALJ") lacked substantial evidence with which to find that her impairments did not meet Listing 1.04A of 20 C.F.R. Part 404, Subpart P, Appendix 1, or equal a combination of Listings 1.04A and Listing 1.04B from June 11, 2003 through July 14, 2006. ECF Dkt. #18. Plaintiff also asserts that the ALJ erred in assessing her complaints of severe and disabling pain and in finding that a sedentary work level would accommodate her pain. ECF Dkt. #18. For the following reasons, the Court AFFIRMS the ALJ's decision.

**I.    PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed an application for DIB on August 19, 2004, alleging disability beginning June 11, 2003 due to degenerative disc disease. Tr. at 48-52. The SSA denied Plaintiff's application

1

initially and on reconsideration. *Id.* at 33-41. Plaintiff requested a hearing before an ALJ which was held on August 15, 2006. *Id.* at 245. Plaintiff's counsel attended the hearing, and Plaintiff and a vocational expert testified. *Id.*

## II. **SUMMARY OF RELEVANT PORTIONS OF ALJ'S DECISION**

On October 27, 2006, the ALJ issued a partially favorable decision to Plaintiff. Tr. at 9-20. He found that while Plaintiff's impairments of status post spinal fusion at L4-S1 and status post pseudomeningocele of the lumbar spine were severe, they did not, individually or in combination, meet or equal the requirements of a listed impairment. Tr. at 15. The ALJ further found that Plaintiff could lift, carry, push or pull ten pounds occasionally, sit six to eight hours per workday, and stand and walk two hours per workday. *Id*. at 15-16. The ALJ found that with the sedentary residual functional capacity ("RFC") that he attributed to Plaintiff,

> Sections 404.1569 of Regulations No. 4 and 16 and Rule 201.09 of Appendix 2, Subpart P, Regulations No. 4 direct that, considering her residual functional capacity, age, education, and work experience, the claimant be found "disabled" commencing on July 15, 2006.

*Id*. at 18. However, the ALJ further found that based upon the sedentary work RFC and the Medical-Vocational Guidelines, Plaintiff was not disabled from her onset date of June 11, 2003, through the date prior to her fiftieth birthday, July 14, 2006. *Id*. The ALJ also discounted Plaintiff's credibility relating to her pain and inability to perform all work-related activities. *Id*.

Plaintiff requested that the Appeals Council review the ALJ's decision and her counsel provided written argument. Tr. at 7-8, 243-244. The Appeals Council denied this request, finding that the arguments did not provide a basis for changing the ALJ's decision. *Id.* at 4.

Plaintiff filed a timely appeal to this Court on March 17, 2007, and Defendant answered. ECF Dkt. #1, 14. Both parties have filed briefs addressing the merits of the case. ECF Dkt. #s 18, 19. At

issue is the decision of the ALJ dated October 27, 2006, which stands as the final decision. Tr. at 23-31; 20 C.F.R. § 404.984.

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205

-3-

of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. LAW AND ANALYSIS

### A. LISTING 1.04

Plaintiff asserts that the ALJ lacked substantial evidence when he found that her conditions did not meet or equal Listing 1.04 of the Listing of Impairments from June 11, 2003 through July 14, 2006. ECF Dkt. #18 at 7. She contends that "[t]he ALJ's decision that Plaintiff's condition does not satisfy this listing is not supported by substantial evidence, and in fact, when the record is properly evaluated as a whole, substantial evidence demonstrates that Ms. Givens meets or equals Listing 1.04(A) and/or (B)." *Id*. at 9. She cites to the medical record showing that she underwent a lumbar fusion in 2003 and continued to have back problems as evidenced by her consistent complaints of back pain radiating into her lower extremities. *Id.*, citing Tr. at 137, 181, 190, 211, 212, 213, 218. She also cites to MRI findings indicating post-operative changes from L3-4 through 5-S1 and

enhancing material at L4-5 and L5-S1 which was believed to represent scar tissue.  ECF Dkt. #18 at 9, citing Tr. at 170.  Plaintiff further notes physical examinations which showed that she had decreased ranges of motions in the lumbar spine, back spasms, decreased touch and pin prick sensation in the right lateral thigh, absent lower limb reflexes, right hip flexion weakness, and positive straight leg raising.  *Id.* at 9, citing Tr. at 138, 183, 190, 208.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity.  20 C.F.R. § 404.1525(a).  To meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment.  *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987).  20 C.F.R. §§ 404.1525(d) and 416.925(d).  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  In order to meet a listed impairment, the claimant must also show that her condition is "either permanent, is expected to result in death, or is expected to last at least 12 months, as well as to show that [her] condition meets or equals one of the listed impairments.  Where a claimant successfully carries this burden, the Secretary will find the claimant disabled without considering the claimant's age, education, and work experience." *Listenbee v. Sec'y of Health and Human Servs.,* 846 F.2d 345, 350 (6th Cir. 1988), citing 20 C.F.R. § 404.1520(d).

Listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

-5-

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

While Plaintiff posits that substantial evidence demonstrates that her impairments meet Listing 1.04A or equal a combination of Listings 1.04A and 1.04B, the standard of review is not whether substantial evidence exists with which to find that she meets a Listing or is disabled. Rather, the standard of review for this Court is to determine whether substantial evidence supports the ALJ's decision finding that she did not meet or equal the Listings from June 11, 2003 through July 14, 2006. *Walters,* 127 F.3d at 528.

In finding that Plaintiff's conditions did not meet or equal a listed impairment, the ALJ held:

> Following two surgical procedures to her lumbar spine in 2003, the first of which coincides with her alleged onset date in June 2003, the record shows that the claimant made an adequate recovery. An MRI of the lumbar spine in August 22, 2003 showed post operative changes, and some evidence of scar tissue, but no central canal stenosis or herniated disc (Exhibit 7F, 26). On January 26, 2004, when evaluated (for dizziness) by Dr. Kumar, the claimant reported that numbness in the right lower extremity had "improved" since surgery and was present only in the right lateral thigh. She had a cage placed in the lumbar spine for support postoperatively. Her gait and station were normal, and she had "good" strength except for giveaway weakness because of pain on flexion to the right hip. The claimant had no atrophy, normal muscle tone and a normal neurovascular examination. She had slightly diminished pinprick sensation in the right lateral thigh. An EMG showed no significant abnormality in the lower extremity. An MRI reviewed by Dr. Kumar was dated September 2002 or prior to surgery. He opined that the claimant suffers from chronic

> low back pain following surgery, and that she could have been experiencing dizziness from medication (Soma) although she took it only in the evening (Exhibit 7F, 4-5).
>
> Dr. Saegh evaluated the claimant on September 30, 2004.  She complained of back pain and denied that her surgery had been beneficial.  She had undergone therapy until December 2003.  She had been in a pain clinic prior to June 2003.  She was on medication for hypertension, and her blood pressure was controlled.  She was taking no medication for her back pain.  On examination, she had normal pulses, no sensory or motor loss, and normal reflexes.  She reported pain in her back when walking, and had a scar over the lumbar spine with tenderness to touch.  Straight leg raising caused pain at 60 degrees.  There was no evidence of muscle atrophy for[sic] spasm.  Dr. Saegh diagnosed a history of degenerative disc disease with chronic low back pain (Exhibit 8F).

Tr. at 15.

Plaintiff has failed to meet her burden of establishing that her back impairments met Listing 1.04A from June 11, 2003 through July 14, 2006 because she fails to present evidence that she had nerve root compromise or compression.  A claimant must exhibit all of the criteria of a listed impairment in order to meet a Listing.  20 C.F.R. § 416.924.  It is insufficient that a claimant comes close to meeting all of the elements of a Listing.  *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986).  While Plaintiff asserts in her brief that "[t]here is evidence of nerve root compression with neuroanatomic distribution of pain which is demonstrated by the radiation of the low back pain into the lower extremities", she fails to point to that portion of the medical record that evidences a finding of nerve root compromise or compression.  Moreover, the Court has not found such evidence in the record.

As pointed out by the ALJ, the evidence of record indicated that Plaintiff underwent an MRI in August 2003 which showed no central canal stenosis or herniated disc.  Tr. at 170.  Further, x-rays in December 2003 showed that Plaintiff's disc spaces were maintained.  *Id.* at 216.  An EMG also showed no significant abnormality in the lower extremity.  *Id*. at 138.  Since the objective evidence

-7-

of record fails to show evidence of nerve root compromise and Plaintiff fails to point to evidence establishing nerve root compromise or compression, substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet Listing 1.04A. *See Booth v. Comm'r of Soc. Sec*., No. 1:06-CV-122, 2008 WL 744230 (S.D. Ohio Mar. 19, 2008)(MRI results showing no definite evidence of nerve root compression constituted substantial evidence to support the ALJ's finding that claimant's spinal impairment did not result in the compromise of a nerve root or spinal cord as required by Listing 1.04A).

Further, the medical record shows that while Plaintiff did suffer some of the symptoms outlined in Listing 1.04A during the relevant time period, these symptoms appeared only intermittently and did not establish that each requirement of Listing 1.04A was present over a period of time. Listing 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation"); *Booth*, 2008 WL 744230. Plaintiff points to physical examination findings in 2004 revealing decreased range of motion, decreased touch and pin prick sensation, spasms, absent reflexes in the lower limbs, weakness in right hip flexion and positive straight leg raising. Tr. at 138, 183. However, these same records also showed in 2004 that she had good strength, a normal, unassisted gait, no motor loss, no muscle atrophy or spasms, and only subjective "give-way" weakness because of pain upon hip flexion. *Id*. Thus, Plaintiff has failed to show that she met *all* of the specific requirements of Listing 1.04A, in addition to showing that she had nerve root or spinal cord compromise or compression. Accordingly, substantial evidence supports the ALJ's decision on this issue.

Plaintiff also asserts that "the medical evidence demonstrates that she at least has a medical equivalency of Listing 1.04(A), in combination with Listing 1.04(b)". ECF Dkt. #18 at 10. She

contends that her combination of symptoms and impairments meet most of the "A" criteria and the "B" criteria of Listing 1.04, which together "equal" Listing 1.04. *Id*. at 10-11. She posits that her August 2003 MRI findings of an enhancing material which was believed to be scar tissue could be a precursor to arachnoiditis, as required by Listing 1.04B because Dr. Saegh and Susteric both found that she had to change positions often. *Id*. at 10.

Substantial evidence supports the ALJ's decision finding that Plaintiff's impairments did not equal Listing 1.04A or Listing 1.04B. It is Plaintiff who must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)(emphasis in original). 20 C.F.R. § 404.1526 provides that medical findings must be at least equal in severity and duration to the listed findings. And 20 C.F.R. § 416.926 provides that medical equivalence is established if medical findings relating to the impairment are at least of equal medical significance. Medical equivalence must be supported by "medically acceptable clinical and laboratory techniques". 20 C.F.R. §§404.1526(b) and 416.926(b). Moreover, showing the functional impact of a claimant's impairment or combination of impairments cannot justify a finding of equivalence. *Zebley*, 493 U.S. at 531, quoting SSR 83-19, at 91-92.

In this case, Plaintiff fails to support a finding of medical equivalence. Her 2003 MRI does not establish a diagnosis of spinal arachnoiditis as required by Listing 1.04B and fails to otherwise establish severity equal to spinal acachnoiditis. Moreover, she provides no medical authority supporting a finding that the scar tissue shown on her MRI could be a precursor to arachnoiditis. In addition, Plaintiff presents no medical findings documenting severe burning or painful dystethesia or the equivalence of such which results in the need for changes in position or posture more than once every two hours. Further, as explained above, Plaintiff provides no medical evidence establishing an

-9-

equivalence in severity to the requirements of Listing 1.04A such as a nerve or spinal cord compromise or compression. In sum, Plaintiff fails to offer nothing more than conclusions and unsupported assertions relating to medical equivalence to either Listing 1.04A or Listing 1.04B, much less a combination of these Listings. Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's impairments did not equal a Listing.

### B. PAIN ALLEGATIONS AND ALJ'S SEDENTARY LIMITATION

Plaintiff also asserts that the ALJ erred in determining that a restriction to sedentary work activity would accommodate her pain. ECF Dkt. #18 at 12. She posits that an objective basis exists for her pain and she demonstrated a level of pain so disabling that it could not be accommodated by a sedentary RFC. *Id.* She cites her use of numerous pain medications, her constant and consistent complaints of pain to her doctors, her statements that she needs assistance in performing daily activities and her inability to perform activities such as bowling, swimming and exercise due to pain. *Id.* at 13. Plaintiff also cites to Dr. Susteric's RFC assessment and Dr. Saegh's statement that she was limited in sitting, standing, walking, climbing, lifting, pushing and pulling due to pain. *Id.*

This Court affords great deference to an ALJ's findings regarding a claimant's credibility since the ALJ observes a witness' demeanor and credibility and has the opportunity to do so. *Casey v. Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993)(quoting *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). It is not the province of this Court to "...try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528. Subjective complaints of pain can support a claim of disability. *Wyatt,* 974 F.2d 680, 686 (6th Cir. 1992). However, an ALJ is not required to accept a plaintiff's own testimony regarding his pain. *Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

The social security regulations establish a two-step process for evaluating pain. 20 C.F.R. § 416.929, SSR 96-7p. First, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Id.*; *Stanley v. Sec'y of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). In other words, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *Id.* Secondly, the ALJ must then determine the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.*

When a disability determination cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in SSR 96-7p. The factors set forth in SSR 96-7p include consideration of: the claimant's daily activities; location, duration, frequency, and intensity of her pain; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication being taken; treatment, other than medication, the individual receives or has received; any measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

It should be noted in the instant case that the ALJ did not totally disregard Plaintiff's complaints of pain and limitations. In fact, the ALJ found that the medical evidence supported a

-11-

finding that Plaintiff's impairments could reasonably be expected to produce pain, thus satisfying the first *Duncan* prong. Tr. at 16. He also limited Plaintiff to sedentary work, giving some credence to Plaintiff's complaints. *Id.* However, based upon the medical findings, the factors of SSR 96-7p and Plaintiff's testimony, the ALJ did not fully accept Plaintiff's testimony with regard to the pain intensity, persistence and resulting functional limitations, except as to those periods of less than twelve months when Plaintiff was recovering from surgery. *Id.* Substantial evidence supports this determination.

The ALJ reviewed the medical evidence, which included diagnoses of status post spinal fusion at L4-S1 and status post pseudomeningocele of the lumbar spine. Tr. at 14-16. He indicated that he had considered all symptoms, the objective medical evidence, and all other factors dictated by 20 C.F.R. § 404-1529 and SSRs 96-4p and 96-7p. *Id.* at 16. He also stated that he had considered the opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, and 96-6p. *Id.*

In discounting Plaintiff's allegations of disabling pain, the ALJ pointed to Plaintiff's lack of acute inpatient or outpatient emergency care since her surgeries in 2003 and the lack of information relating to her back impairment in the treatment notes of Dr. Goliat, her treating physician. Tr. at 16. He noted that many of Dr. Goliat's treatment notes did not even mention back pain. *Id.* He also gave little weight to the opinion of Dr. Susteric, Dr. Goliat's partner who had opined that Plaintiff was restricted to lifting five pounds, standing and walking twenty minutes, and sitting twenty minutes at a time. *Id.* at 17. In doing so, he explained that Dr. Susteric's restrictions were not supported by any current diagnostic tests, laboratory studies or ongoing clinical findings, and he indicated that Plaintiff had even admitted that while she may have seen Dr. Susteric, he had never examined her back and was not her treating physician. *Id.* at 17. Substantial evidence supports these findings as Dr. Susteric

does not provide objective support for his RFC, except to indicate that Plaintiff has severe back/leg pain, instability in her legs, paresthesias, back spasms and constant pain. *Id*. at 208. This subjective evidence, coupled with Plaintiff's testimony that Dr. Susteric never examined her back and was not her treating physician, constitutes substantial evidence to attribute less weight to Dr. Susteric's RFC.

The ALJ also discounted Dr. Saegh's RFC assessment, finding that it was based only upon Plaintiff's subjective symptoms. Tr. at 17. Substantial evidence supports this determination as Dr. Saegh did in fact state in his clinical assessment that "[o]n the basis of subjective symptoms, she has limitation[sic] of sitting, standing, walking, climbing, lifting, pushing and pulling. Objectively, she has a scar and tenderness over the lumbosacral spine and pain in this area with ROM testing of the back and shoulder." *Id.* at 183. Dr. Saegh appears to have restricted Plaintiff's abilities based upon her self-reports of pain and thereafter mentioned a scar on Plaintiff's back and tenderness over her lumbosacral spine as objective findings. Further, Dr. Saegh did not specify the extent to which he would restrict Plaintiff's activities. For these reasons, substantial evidence supports the ALJ's decision to attribute little weight to Dr. Saegh's assessment.

In addition, the ALJ found that Plaintiff's complaints of severe depression were unsupported and did not restrict Plaintiff because the record contained no diagnosis of a medically determinable mental impairment and even though Plaintiff reported that she was taking Prozac, the treatment notes from her treating physician Dr. Goliat did not indicate that Plaintiff suffered from severe depression or required a referral for professional mental health treatment. *Id*. at 16. Substantial evidence supports this determination as well as Plaintiff points to no medical evidence in the record of a depression diagnosis and Dr. Goliat's notes do not reflect a diagnosis of severe depression or a need for Plaintiff to obtain mental health treatment.

Moreover, the ALJ considered Plaintiff's complaints of pain and other symptoms using the proper criteria. He reviewed Plaintiff's medications, finding that Plaintiff told her doctors during

some periods that she was not taking pain medication. Tr. at 17. He also found that the pain medications that she did take at time caused no side effects that would significantly interfere with her ability to perform sedentary work. *Id*. He further considered Plaintiff's testimony relating to her daily activities and considered the state agency medical consultant's RFC of light work, but gave credence to some of Plaintiff's testimony by limiting her to sedentary work. *Id*. These supported factors, coupled with the objective medical evidence and Plaintiff's testimony, provide substantial evidence to support the ALJ's decision to discount Plaintiff's complaints of pain and limitations.

The undersigned further finds that substantial evidence supports the ALJ's use of the Medical-Vocational Guidelines in order to find that Plaintiff was not disabled prior to reaching the age of 50. Tr. at 18. The Medical-Vocational Guidelines are grids that consider a claimant's age, education and previous work experience and direct a finding of "disabled" or "not disabled" depending upon those factors. 20 C.F.R. Part 404, Subpart P, Appx. 2, Table 1-3. The Guidelines eliminate the need for calling vocational experts. *Hurt v. Sec'y of Health and Human Servs*., 816 F.2d 1141, 142 (6th Cir. 1987).

At Step Four of the sequential steps for determining disability in this case, the ALJ determined that Plaintiff could not perform her past relevant work because none of her jobs met the RFC for sedentary work. Tr. at 17. After Plaintiff met her burden at Step Four, the burden shifted to the Commissioner to establish that Plaintiff could perform substantial gainful work which existed in significant numbers in the national economy. *Cole v. Sec'y of Health and Human Servs*., 820 F.2d 768, 771 (6th Cir. 1987). An ALJ can rely upon the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 *et seq*. only when a severe nonexertional impairment does not exist. *Kirk v. Sec'y of Health and Human Servs*., 667 F.2d 524, 528-529 (6th Cir. 1981). A severe impairment can be exertional or nonexertional. A nonexertional impairment is one that encompasses "mental, sensory, or environmental limitations." *Cole*, 820 F.2d at 772.

Here, substantial evidence supports the ALJ's reliance upon the Medical-Vocational Guidelines because he reasonably found that Plaintiff had no severe nonexertional impairments. As explained above, substantial evidence supported the ALJ's finding that Plaintiff's depression was not a severe impairment because no depression diagnosis existed in the record and Dr. Goliat's treatment notes did not include a depression diagnosis or indicate the need for a referral to a mental health professional. The ALJ properly applied the Guidelines by relying upon the factors outlined in 20 C.F.R. Part 404, Subpart P, Appendix 2, §201.19 as Plaintiff was 46 to 49 years old during the relevant time period from her onset date to her fiftieth birthday and was therefore designated a "younger individual". Plaintiff had a limited, eleventh grade education and could perform sedentary work as reasonably found by the ALJ. Applying these factors, the Guidelines directed a finding of "not disabled" and substantial evidence therefore supported the ALJ's finding that Plaintiff was not disabled from her onset date of June11, 2003, through the date of her fiftieth birthday, July 15, 2006.

## VI.   CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision denying Plaintiff DIB from June 11, 2003 through July 14, 2006.

Dated: May 22, 2008                                  */s/George J. Limbert*
                                                           GEORGE J. LIMBERT
                                                           U.S. MAGISTRATE JUDGE